UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-01191-RMR -SBP

LANDIN GOLOJA,
TYLER MAYBEE,
CAITLAN REYNOLDS, and
DANIEL SHEINER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

VAIL RESORTS, INC., and
ALTERRA MOUNTAIN COMPANY,

Defendants.

---

**DEFENDANT ALTERRA MOUNTAIN COMPANY'S MOTION TO STRIKE CLASS ALLEGATIONS**

---

Defendant Alterra Mountain Company ("Alterra") brings this motion pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) to strike Plaintiffs' class allegations. The Ikon pass products at the heart of Plaintiffs' antitrust claims are subject to an enforceable class action waiver. Plaintiffs' class allegations are facially overbroad and should be stricken.

Alterra conferred with Plaintiffs on May 20, 2026, and identified the bases on which Alterra seeks relief. Plaintiffs oppose the relief sought in this motion.

## INTRODUCTION

To purchase an Ikon Pass, Ikon Base Pass, Ikon Session Pass (collectively, the "Ikon pass products"), substantially all passholders must assent to the Ikon pass

product terms and conditions. Since March 31, 2025, those terms and conditions have included an enforceable class action waiver. The waiver is clear that the passholder waives the ability to use the procedural mechanism of a class action to assert claims against Alterra. Courts in Colorado and across the country have consistently enforced this type of waiver. This Court should too.

Plaintiffs seek to assert antitrust claims against Alterra on behalf of a nationwide class that includes all purchasers of the Ikon pass products from March 23, 2022, to the present, alleging antitrust violations based on the core function of the Ikon pass products: allowing skiers a variety of options for multi-mountain access at discounted rates. The proposed class sweeps far too broadly, as it includes passholders that are bound by the class action waiver, including three of the four class representatives. As such, this Court should strike Plaintiffs' class allegations now, at the pleading stage, to prevent lengthy and burdensome class discovery for a class that cannot be certified.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs' claims against Alterra center on the Ikon Pass and its many iterations. The Ikon pass products allow skiers to access multiple mountains across the United States, Canada, and other countries that are owned and/or operated by Alterra or by independent entities with whom Alterra partners. (Compl. ¶¶ 49–51, 84, 90, 97.) According to Plaintiffs, by providing access to multiple mountains at a discounted rate, the Ikon pass products unlawfully tie skiers' access to so-called "Destination" and

"Regional" ski areas.[1] (*Id.* ¶¶ 104, 108.) Specifically, Plaintiffs allege skiers cannot purchase "reasonable access" to Destination ski areas without purchasing Ikon pass products, which purportedly unlawfully bundle access to Destination ski areas with access to Regional ski areas. (*Id.* ¶ 122.) Plaintiffs seek to assert three claims against Alterra on behalf of a proposed nationwide class: unlawful bundling in violation of Section 1 of the Sherman Act (*id.* ¶¶ 187–95); unlawful bundling in violation of the Colorado Antitrust Act of 2023 (*id.* ¶¶ 205–13); and unjust enrichment (*id.* ¶¶ 214–20).[2]

Plaintiffs bring this putative class action under Rules 23(a) and 23(b)(3) for damages and injunctive relief on behalf of the following class:

> All persons in the United States who purchased a Mega Pass [for Alterra, an Ikon pass product] or a Lift Ticket for a ski area that is included on a Mega Pass [for Alterra, an Ikon pass product] directly from Defendants at any time from March 23, 2022 until Defendants' unlawful conduct and its anticompetitive effects cease to persist ("Class Period").

(*Id.* ¶ 167.) Plaintiffs contend "there are likely millions of Class members." (*Id.* ¶ 169.) Plaintiffs summarily allege they "are not bound by any contractual provisions limiting their ability to bring this as a Class Action," and any "such provisions are legally unenforceable as to Plaintiffs and members of the Class." (*Id.* ¶ 177.) That is incorrect.

In fact, the terms and conditions for the Ikon pass products, effective March 31, 2025, include the following unambiguous class action waiver under the clear heading "CLASS ACTION AND JURY TRIAL WAIVER":

---

[1] Alterra uses the terms "Destination" and "Regional" ski areas as referenced in the complaint solely for the purpose of this motion.

[2] Alterra also has filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) challenging the sufficiency of each of Plaintiffs' three claims. (ECF 32.)

> You may only resolve disputes relating to or arising out of this Agreement on an individual basis and you may not bring, and you expressly waive the right to bring, a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class action, Private Attorneys General actions, and consolidation with other actions are not allowed.

(Alterra's App., p. 11 – Declaration of John Collins ("Collins Decl."), Ex. A.)[3] The terms and conditions also state: "Your continued use of Pass Products constitutes acceptance of Alterra Mountain Company's most current version of the Agreement." (*Id.*, p. 12.) An individual purchasing an Ikon pass product online—where substantially all Ikon pass products are purchased—must affirmatively consent to the terms and conditions before completing their purchase. (*See* Alterra's App., pp. 13–14 - Collins Decl., Exs. B & C; *id.* p. 2 - Collins Decl., ¶ 4.) The terms and conditions are also available online, even without a purchase.[4]

Three of the four named Plaintiffs (Caitlan Reynolds, Daniel Sheiner, and Tyler Maybee) assented to the terms and conditions that contain the enforceable class action waiver when they purchased Ikon pass products after March 31, 2025. (Alterra's App., p. 4 - Collins Decl., ¶¶ 10–11.)

## LEGAL STANDARD

Rule 12(f) is the proper vehicle to strike class action allegations at the pleadings stage. *Gilbert v. United States Olympic Comm.*, No. 18-CV-00981-CMA-MEH, 2019 WL 1058194, at *32 (D. Colo. Mar. 6, 2019), *report and recommendation adopted in*

---

[3] The terms and conditions also apply to "any other local pass or Pass Frequency Products [including any other multi-day pass product used to access an Alterra resort]," in addition to the Ikon pass products. (Alterra's App., p. 5 - Collins Decl., Ex. A.)

[4] *See* https://www.ikonpass.com/en/purchase-terms-and-conditions.

*relevant part*, 423 F. Supp. 3d 1112 (D. Colo. 2019); *see also Ramsay v. Frontier, Inc.*, No. 19-CV-03544-CMA-NRN, 2020 WL 4557545, at *24 (D. Colo. July 30, 2020), *report and recommendation adopted*, No. 19-CV-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021) ("[A] motion to strike class allegations on the pleadings should be brought under Rule 12(f)."). A motion to strike class action allegations is appropriate because allowing "such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." § 1383 Motion to Strike—Grounds Not Mentioned in Rule 12(f), 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.) (updated Apr. 2026); *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *6 (D. Colo. Sept. 25, 2012) (granting a motion to strike where "Plaintiff has not made a prima facie showing that the requirements of Rule 23 are satisfied because the class is overbroad").

Rule 23(c)(1)(A) also states that courts should "[a]t an early practicable time," determine whether the case should proceed as a class action, and Rule 23(d)(1)(D) permits courts to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons." *See Gilbert*, 2019 WL 1058194, at *32 ("Other courts have found no significance to the distinction [between Rule 12(f) and Rule 23(d)(1)(d)] and decided to strike class action allegations under Rule 12(f) and Rule 23(d)(1)(D)."); *see also Bearden v. Honeywell Int'l Inc.*, No. 3:09-01035, 2010 WL 1223936, at *9 (M.D. Tenn. Mar. 24, 2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

"A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at *3 (D. Colo. Dec. 4, 2024) (quoting *Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019)). Here, no amount of discovery will change the fact that Plaintiffs' proposed class includes putative members who signed Alterra's terms and conditions that include an enforceable class waiver.

## ARGUMENT

### I. THE CLASS ACTION WAIVER PROVISION IS ENFORCEABLE.

"Courts applying Colorado law start with the presumption that a contract clause is enforceable." *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744, at *17 (D. Colo. Apr. 20, 2009). And, more specifically, class action waivers are routinely enforced by courts applying Colorado law.[5] *See, e.g.*, *Gutman v. PointsBet USA Inc.*, No. 1:22-CV-02137-SKC-SBP, 2024 WL 5493716, at *5 (D. Colo. Aug. 21, 2024) (finding applicable terms and conditions and class action waiver not unconscionable); *Hartsfield v. Frontier Airlines, Inc.*, No. 23-CV-02093-RMR-KAS, 2024 WL 3027972, at *4 (D. Colo. June 14, 2024), *report and recommendation adopted*, No. 23-CV-02093-RMR-KAS, 2024 WL 3611430 (D. Colo. July 1, 2024) ("As with all contractual provisions, class action waivers are presumed enforceable under Colorado law."); *Bonanno*, 2009 WL 1068744, at *11 (finding class action waiver enforceable

---

[5] The terms and conditions contain a choice of law provision that states claims like those brought by Plaintiffs shall be governed by Colorado law. (*See* Alterra's App., p. 12 - Collins Decl., Ex. A.)

under Colorado law despite a power imbalance between the parties). Courts across the country also regularly enforce class action waivers.[6]

Courts also regularly enforce such waivers at the pleading stage. *Hartsfield*, 2024 WL 3027972, at *4 (granting motion at the pleadings stage); *Phillips v. Riverside Trans., Inc.*, No. 23-2440-EFM-ADM, 2024 WL 3400252, at *6 (D. Kan. July 12, 2024) (same); *Smith v. Associated Couriers, LLC*, No. 4:25-cv-01224-AGF, 2026 WL 621325, at *4 (E.D. Mo. Mar. 5, 2026) ("[D]istrict courts in this district and others have stricken collective and class action allegations based on waivers at the Rule 12 stage."); *Thomas v. AAM Holding Corp.*, 1:24-cv-7253 (MKV), 2025 WL 2617450, at *4 (S.D.N.Y.

[6] *See, e.g.*, *Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *7–9 (N.D. Ill. Jan. 11, 2022); *Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022); *Barnett v. Concentrix Sols. Corp.*, 2022 WL 17486813, at *5–6 (D. Ariz. Dec. 7, 2022), *appeal dismissed*, 2023 WL 2596688 (9th Cir. Jan. 31, 2023); *Román v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020), *aff'd*, 2021 WL 4317318 (11th Cir. Oct. 1, 2020); *Hancock v. Jackson Hewitt Tax Serv., Inc.*, 2020 WL 2487562, at *3 (W.D. Tex. May 14, 2020), *report and recommendation adopted*, 2020 WL 10054530 (W.D. Tex. June 8, 2020); *Horowitz v. AT&T Inc.*, 2019 WL 77306, at *3–4 (D.N.J. Jan. 2, 2019); *McIntosh v. Royal Caribbean Cruises, Ltd.*, 2018 WL 1732177, at *3 (S.D. Fla. Apr. 10, 2018); *DeLuca v. Royal Caribbean Cruises, Ltd*., 244 F. Supp. 3d 1342, 1348–49 (S.D. Fla. 2017); *Convergys Corp. v. NLRB*, 866 F.3d 635, 638 (5th Cir. 2017); *Delaney v. FTS Int'l Servs., LLC*, 2017 WL 264463, at *7–9 (M.D. Pa. Jan. 20, 2017); *Feamster v. Compucom Sys., Inc.*, 2016 WL 722190, at *3–4 (W.D. Va. Feb. 19, 2016); *Serrano v. Globe Energy Serv., LLC*, 2016 WL 7616716, at *5 (W.D. Tex. Mar. 3, 2016); *Mark v. Gawker Media LLC*, 2016 WL 1271064, at *6 (S.D.N.Y. Mar. 29, 2016); *Benedict v. Hewlett-Packard Co.*, 2016 WL 1213985, at *5–6 (N.D. Cal. Mar. 29, 2016); *Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490, at *9 (E.D. Pa. May 27, 2016); *Mazurkiewicz v. Clayton Homes, Inc*., 971 F. Supp. 2d 682, 691–92 (S.D. Tex. 2013); *Kubischta v. Schlumberger Tech Corp*, 2016 WL 3752917, at *6–8 (W.D. Pa. July 14, 2016); *Birdsong v. AT & T Corp*., 2013 WL 1120783, at *6 (N.D. Cal. Mar. 18, 2013); *Palmer Convergys Corp. v. Conver*, 2012 WL 425256, at *2–6 (M.D. Ga. Feb. 9, 2021); *Lu v. AT & T Servs., Inc.*, 2011 WL 2470268, at *3 (N.D. Cal. June 21, 2011); *Copello v. Boehringer Ingelheim Pharms. Inc.*, 812 F. Supp. 2d 886, 897 (N.D. Ill. 2011).

Aug. 26, 2025) ("Courts can and should enforce these contractual waivers by striking class allegations from complaints when the complaints fail to state any grounds upon which plaintiffs could plausibly pursue their claims through a class action.").

To the extent Plaintiffs seek to "escape application of an unambiguous contractual provision, the burden rests on Plaintiffs to show that the Court should not enforce the class action bar provision." *Bonnano*, 2009 WL 1068744, at *12; *see also Hartsfield*, 2024 WL 3027972, at *4. This Court should enforce the class action waiver against Plaintiffs because (1) the language is broad enough to encompass Plaintiffs' antitrust claims, (2) the waiver is unambiguous, and (3) Plaintiffs cannot show that the waiver is unconscionable.

**A. The Class Action Waiver Applies to Plaintiffs' Antitrust Claims.**

Alterra's class action waiver applies to "disputes relating to or arising out of this Agreement." (Alterra's App., p. 11 - Collins Decl., Ex. A.) Courts broadly interpret contractual clauses containing the phrases "relating to" and "arising out of." *City & Cnty. of Denver v. District Court in and for City & Cnty. of Denver*, 939 P.2d 1353, 1366 (Colo. 1997) ("[T]his decision is consistent with cases from other jurisdictions interpreting the similar phrase 'relating to the contract' . . . as being broad rather than restrictive."); *id.* at 1366 (holding that the phrases "arising under" and "arising out of" were as broad as "relating to"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (holding that an arbitration clause with "arising out of or relating to" language was a "broad" one). In deciding whether claims fall within the scope of a contractual provision, the Colorado Supreme Court has held that "[t]he factual allegations which form the

basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the [contractual] clause." *City & Cnty. of Denver*, 939 P.2d at 1364.

For example, the Tenth Circuit recently examined a contract governed by Colorado law and held that, for claims to be encompassed under the "relating to" language of a contractual provision, the contractional relationship must not be merely "fortuitous" in relation to the plaintiff's claim. *Vaughn v. JP Morgan Chase & Co.*, No. 24-1016, 2025 WL 3514012, at *9 (10th Cir. Dec. 8, 2025) (unpublished). In *Vaughn*, the Tenth Circuit found that while a claim based on "racial discrimination certainly sounds different than banking fees and accounts," the plaintiff's claim "related to" the bank's terms of use contract because the incident involving the alleged discrimination "occurred while [the plaintiff] was attempting to perform transactions in her capacity as a Chase account holder." *Id.*[7]

Plaintiffs' antitrust claims fall within the scope of Alterra's terms and conditions because they are based on Plaintiffs' use of Ikon pass products. Plaintiffs' core

---

[7] The Tenth Circuit has also addressed the scope of the "arising from" language with respect to antitrust claims in the context of an arbitration clause in a licensing agreement. *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1513–16 (10th Cir. 1995). After analyzing the language under the Federal Arbitration Act, the court found that the "arbitration clause covers antitrust disputes in this case, provided that those disputes are within the scope of the agreement." *Id.* at 1515. The court went on to explain that certain antitrust claims regarding Coor's proprietary information fell within the scope of the licensing agreement, while claims regarding market concentration—which were unrelated to the licensing agreement—did not. *Id.* at 1517. Here, in contrast, Plaintiffs' claims directly relate to Alterra's terms and conditions because they are based on Plaintiffs' purchase and use of Ikon pass products.

allegation is that, "[s]pecifically, through the . . . Ikon Pass, Defendants use the market power they have in the market for Destination Ski Resorts . . . to restrain competition in the market for Regional Ski Areas." (Compl. ¶ 17; *see also id*. ¶ 105 (alleging that "[t]he Mega Passes [which include the Ikon pass products] offered by . . . Alterra function as an anticompetitive tie-in, or bundle, under the antitrust laws").) Plaintiffs also allege that their purchase of the Ikon pass products prevents them from skiing at independent Regional ski areas. (*See id.* ¶ 157.) As in *Vaughn*, Plaintiffs' antitrust claims "relate to" and "aris[e] out of" their purchase and use of Ikon pass products.

In addition, the waiver language is broad enough to cover any events "relating to" or "arising out of" the terms and conditions that occurred *before* purchasers assented to them. The terms and conditions state that "continued use of Pass Products constitutes acceptance of Alterra Mountain Company's most current version of the Agreement." (Alterra's App., p. 12 - Collins Decl., Ex. A.) Accordingly, Plaintiffs' antitrust claims fall within the scope of the class action waiver. Even if this unambiguous language were not present, the Tenth Circuit has held that the "arising out of" language is "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement." *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (quoting *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993)). Therefore, purchasers who assented to the class action waiver agreed they cannot bring class claims for any alleged injuries that occurred during prior seasons for which they may have purchased an Ikon pass product.

**B. The Class Action Waiver Is Unambiguous.**

The class action waiver provision contained in Alterra's terms and conditions could not be more clear. The waiver plainly states an individual may "only" resolve disputes against Alterra on "an individual basis," and an individual "may not bring, and you expressly waive the right to bring, a claim as a plaintiff or a member in a class." (Alterra's App., p. 11 - Collins Decl., Ex. A.) This language is unambiguous and mandatory. *See Gutman v. PointsBet USA Inc.*, 1:22-CV-02137-SKC-SBP, 2024 WL 2106517, at *13 (D. Colo. Apr. 18, 2024), *report and recommendation adopted in relevant part*, 1:22-CV-02137-SKC-SBP, 2024 WL 5493716 (D. Colo. Aug. 21, 2024) (applying Colorado law to reject "strained construction[s]" of a class action waiver).

**C. The Class Action Waiver Is Not Unconscionable.**

Any contention by Plaintiffs that the class action waiver is unconscionable will fail. Federal courts interpreting such waivers in contracts governed by Colorado law have recognized that it is not "unconscionable for a party to agree to waive a procedural tool, such as that afforded by Fed. R. Civ. P. 23, versus a substantive right." *Gutman*, 2024 WL 5493716, at *5; *Bonanno*, 2009 WL 1068744, at *11 ("[T]he history and evolution of class action litigation demonstrates that class certification is a procedural mechanism, not a substantive right. As such, this Court believes that a lesser level of scrutiny is applicable to an agreement by a party not to proceed as a class.").

In Colorado, it is Plaintiffs' burden to establish unconscionability. *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011); *Gutman*, 2024 WL 5493716, at *5. "[F]or a contract to be unconscionable, it must be both substantively and procedurally

unconscionable." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). Colorado courts consider several factors in determining whether a provision is unconscionable:

> (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing *Davis*, 712 P.2d at 991).[8] No one factor predominates this analysis, and courts examine these factors in the context of the totality of circumstances to determine if there is "overreaching on the part of one of the parties." *Davis*, 712 P.2d at 991. Plaintiffs cannot show that these factors support a finding of unconscionability here.

*Bonanno* is particularly instructive. There, the court analyzed a class action waiver in a franchise agreement. Noting that most of the case law centered around class action waivers in the context of arbitration agreements, which did not apply to that case (or this case), it performed its own unconscionability analysis under Colorado law. *See Bonanno*, 2009 WL 1068744, at *17–18 (citing *Davis*, 712 P.2d at 991). The court acknowledged that the franchise agreement was a standard form contract and that the

[8] "The first, second, third, sixth, and seventh factors relate to procedural unconscionability," while the fourth and fifth factors relate to substantive unconscionability. *Vernon*, 925 F. Supp. 2d at 1195.

defendant had “far greater power in the . . . relationship” than any franchisee. *See id.* at *18, *22. Nevertheless, the Court concluded that, on balance, the “[p]laintiffs have not demonstrated any unreasonable ‘overreaching’ by [the defendant] that would render the class action bar provision unconscionable.” *Id.* at *23. The plaintiffs had “ample opportunity” to review the agreement and the class wavier language was not in fine print. *Id.* at *19. Most importantly, the court recognized that the waiver serves the valid commercial purpose of reducing litigation costs and providing greater certainty to the business, and that the waiver was not substantively unfair because only a procedural—not a substantive right—was waived. *Id.* at *20–21.

*Bonanno* also is consistent with more recent case law enforcing class action waivers in the context of a consumer contract. *See, e.g.*, *Bisaillon v. Vail Resorts, Inc.*, No. 25-CV-02056-NYW-KAS, 2026 WL 820815, at *7–8 (D. Colo. Mar. 25, 2026) (enforcing class action waiver in ski resort’s terms and conditions for the plaintiff’s claims regarding a labor strike because the applicable terms and conditions were not illusory and the plaintiff’s claims “relate to” the terms and conditions providing access to the ski resort); *Gutman*, 2024 WL 5493716, at *4–5 (enforcing class action waiver contained in terms and conditions linked in a “Click-Wrap Webpage” for the plaintiff’s claims against a sports betting website because the applicable terms and conditions were not “ambiguous, illusory, unlawful, [or] unconscionable”).

This Court should reach the same conclusion here. While the first factor may weigh slightly in Plaintiffs’ favor, all the other factors weigh strongly in favor of Alterra. Purchasers had an opportunity to read the terms before assenting to them and the class

action waiver is not hidden in fine print. The waiver is commercially reasonable as it reduces the number of large lawsuits that Alterra faces from purchasers and therefore provides business certainty. *Bonnano*, 2009 WL 1068744, at *20. Nor is it substantively unfair, as it simply limits the use of a procedural mechanism to pursue claims on behalf of others while not affecting the right to pursue individual claims. *See id.* at *21. Plaintiffs cannot meet their burden of showing unconscionability.

* * *

In sum, Alterra's class action waiver encompasses Plaintiffs' antitrust claims, is not ambiguous, and is not unconscionable. Accordingly, the Court should enforce it against Plaintiffs. *See id.* at *18 (finding that "if a party cannot meet its burden to show that the contract clause is unconscionable, the court will enforce it").

## II. PLAINTIFFS' CLASS DEFINITION IS FACIALLY OVERBROAD AS IT INCLUDES CLASS MEMBERS SUBJECT TO THE WAIVER.

Plaintiffs' proposed class includes all persons that purchased an Ikon pass product from Alterra "from March 23, 2022 until Defendants' unlawful conduct and its anticompetitive effects cease to persist." (Compl. ¶ 167.) This definition is facially overbroad, as any person who assented to Alterra's terms and conditions that included the waiver cannot be a part of the class, including three of the four named Plaintiffs. (*See* Alterra's App., p. 4 - Collins Decl., ¶¶ 10–11.) Courts in this District routinely strike class allegations where the alleged class definition is facially overbroad.

In *Edwards v. Zenimax Media Inc.*, Judge Daniel struck class allegations prior to discovery because the plaintiff failed to adequately define the class. 2012 WL 4378219, at *4–5. The court explained that the class definition was "inadequate because it is

overbroad" and failed to "sufficiently delineate which [individuals] are correctly included within the class." *Id.* at *6. In *Gilbert v. United States Olympic Committee*, Magistrate Judge Hegarty struck a proposed damages class definition as overly broad because the definition was not limited to those that allegedly suffered the injury at issue. 2019 WL 1058194, at *32. The court explained that the fact that the class definition included "uninjured class members or individuals whose claim would be time-barred" warranted granting the motion to strike. *Id.* at *33.

Likewise, in *Ramsay v. Frontier, Inc.*, Magistrate Judge Neureiter struck class allegations as "wildly overbroad" where the class definition included uninjured individuals who were not entitled to the requested injunctive relief. 2020 WL 4557545, at *24. And in *Faulhaber v. Petzl America, Inc.*, Judge Sweeney struck class allegations, finding that the class was overbroad because it included potential class members that suffered no injury. 656 F. Supp. 3d 1257, 1273 (D. Colo. 2023).

This Court should follow suit. Plaintiffs' proposed class is overbroad because it includes members (including three of the four named Plaintiffs) who cannot—no matter the amount of discovery—participate in a class action against Alterra. The class allegations should be struck in their entirety at this early stage to avoid lengthy class discovery for a class that cannot be certified.

## CONCLUSION

For these reasons, Alterra respectfully requests that the Court enforce Alterra's class action waiver and strike Plaintiffs' class allegations in their entirety.

Dated: June 18, 2026.

Respectfully submitted,

*s/ Kathryn A. Reilly*

Kathryn A. Reilly
Michael Baker
Natalie West
Kendra Sendler Kumor
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: reilly@wtotrial.com
mbaker@wtotrial.com
west@wtotrial.com
kumor@wtotrial.com

Attorneys for Defendant Alterra Mountain Company

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on June 18, 2026, I electronically filed the foregoing **DEFENDANT ALTERRA MOUNTAIN COMPANY'S MOTION TO STRIKE CLASS ALLEGATIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathryn A. Reilly*